UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SAMUEL HERNANDEZ-AREVALO,<br><br>Petitioner,<br><br>v.<br><br>TODD BLANCHE,[1] U.S. Attorney General;<br>MARKWAYNE MULLIN, Secretary of Department of Homeland Security;<br>DAVID T. WESLING, Field Office Director for Boston Field Office;<br>ANTONE MONIZ, Warden Plymouth County Correctional Facility,<br><br>Respondents. | CIVIL ACTION NO. 26-13891-WGY |

YOUNG, D.J. October 29, 2026

**MEMORANDUM AND ORDER**

Petitioner Samuel Hernandez-Arevalo ("Petitioner"), pro se, has filed a habeas petition under 28 U.S.C. § 2241 ("Petition" or "Pet."), ECF No.1, to challenge the lawfulness of his detention. The Court previously ordered the government to provide Petitioner with a bond hearing in immigration court that complies with due process standards as explicated by the First Circuit in Hernandez-Lara v. Lyons, 10 F.4th 19 (1st Cir. 2021). Specifically, the First Circuit has held that due process requires the government,

[1] Todd Blanche is substituted for Pamela Bondi. See Fed. R. Civ. P. 25(d).

before it continues detaining a noncitizen under 8 U.S.C. § 1226(a), "to either (1) prove by clear and convincing evidence that she poses a danger to the community or (2) prove by a preponderance of the evidence that she poses a flight risk." Hernandez-Lara at 41.

In their Response to the Habeas Petition ("Resp."), ECF No. 10, Respondents request the Court dismiss this matter because Petitioner "already has a pending habeas petition." Resp. at 1. Respondents offered no further argument and did not address the Petitioner's due process claims. Id. Here, Petitioner asserts new due process claims, thus the Petition is not duplicative. Therefore, the Court will not dismiss the matter on procedural grounds.

Given the highly circumscribed nature of judicial review in this context, courts cannot override an immigration judge's bond decision simply because they "might have reached a different result if considering the issue de novo or in the context of a bail review in a criminal case." Massingue v. Streeter, No. 19-cv-30159, 2020 WL 1866255, at *5 (D. Mass. Apr. 14, 2020) (Robertson, U.S.M.J.). Rather, habeas relief is appropriate only if the immigration judge's "exercise of discretion in denying bond was so arbitrary that it would offend fundamental tenets of due process." Diaz Ortiz v. Smith, 384 F. Supp. 3d 140, 144 (D. Mass. 2019) (Saris,

J.) (quoting Pratt v. Doll, No. 17-cv-01020, 2019 WL 722578, at *4 (M.D. Pa. Feb. 20, 2019)).

Contrary to Petitioner's argument, the Immigration Judge in this case articulated the correct standard of proof requiring the government to bear the burden by clear and convincing evidence as to whether the Petitioner "poses a danger to the community" and proof by a fair preponderance of the evidence as to risk of flight. See ECF No. 1-1 at 2 (citing Hernandez-Lara at 41.).

**A. Risk of Flight**

Here, the Immigration Judge found by a fair preponderance of the evidence:

> In making its decision the Court notes the positive equities contained in the Respondent's case, such as his consistent employment for North Country Roofing, LLC, tax payments, family ties, including his 4-year-old U.S. citizen son who is diagnosed with Autism Spectrum Disorder and his pregnant wife, community involvement, and possibility for relief. Bond. Exhs. 2, 4; Matter of Andrade, 19 I&N Dec. at 491; Matter of Shaw, 17 I&N Dec; at 178; Matter of Patel, 15 I&N Dec. at 667. Additionally, the Court notes that the charges against the Respondent were dismissed. See Matter of Guerra, 24 I&N Dec. at 40 ("In the context of custody redeterminations, Immigration Judges are not limited to considering only criminal convictions in assessing whether an alien is a danger to the community"). However, the Respondent's application for relief was denied and is currently pending appeal before the Board of Immigration Appeals and any relief that would result is speculative. See Matter of Andrade, 19 I&N Dec. at 490 (stating that an alien with a greater likelihood of being granted relief has a stronger motivation to appear for a hearing than one who has less potential to obtain relief). Additionally, the Respondent entered the United States without being inspected and admitted or paroled,

> showing a disregard for the immigration laws of the United States.

Bond Order of the Immigration Judge ("Bond Order"), ECF No. 1-1.

Here, the Immigration Judge commendably found facts tending to suggest that Petitioner does **not** present a risk of flight but no contrary facts specifically addressed the risk of flight save for concluding that Petitioner is an alien who the Immigration Judge has found dangerous and concluding that the BIA is unlikely to reverse such finding. This is tantamount to a ruling of law that all such petitioners must be detained. Absent any actual finding of fact specifically addressed to the risk of flight issue, such ruling violates Hernandez-Lara and is arbitrary and capricious. It is set aside as violative of Petitioner's right to due process.

**B. The dangerous finding**

Here, the Immigration Judge made these specific findings:

> [O]n November 1, 2024[2], the Respondent was arrested for and charged with assault and battery of his daughter. Bond Exh. 3 at 17. The Respondent's juvenile daughter appeared at the police station on November 1, 2024 to report a domestic dispute between her and her father,

[2] This is a clearly erroneous finding and a crucial one. The Petitioner himself admits the relevant date is June 25, 2026. Pet. ¶ 5. This Court will accept the stated finding as simply a typo. Were it accurate, see pp. 6-7, infra, the information would be so stale as to be unworthy of probative value. Hernandez-Lara speaks in the **present** tense - "poses a danger to the community" - i.e. poses such a danger at the time of the bond hearing. A stale police report, were it nearly two years old, while certainly serious, would add little or nothing.

the Respondent. Id. The juvenile stated that she had a bruise on her leg, which had since faded, after the Respondent "slapped her multiple times in the face and then kicked her in the thigh and knee, causing her to fall to the ground." Id. The report indicates that the officer observed a small mark on the juvenile's leg. Id. The juvenile claimed her mother "witnessed the dispute and swiftly ended it by separating both combatants." Id. The juvenile reported to police officers that she waited to report the incident "because her father pays all the bills in the house, and she did not want her mother or her two-year-old brother to lose the house over it." Id. Counsel for the Respondent ("Counsel") argued that the Respondent's daughter only made these statements to the police because she was upset that her father would not allow her to spend time with friends that he believed to be bad influences. Counsel further emphasized that the officers immediately reported to the Respondent's home and noted that "the apartment did not look in disarray, and the two-year-old child looked well taken care of." Id. Counsel explained that the Respondent recanted her statements in a declaration and claimed that she "lied to the authorities." Bond Exh. 4 at 4.

Moreover, although the Respondent's daughter recanted her statement regarding the assault, she stated to the officers that she was originally hesitant to report "because her father pays all the bills in the house, and she did not want her mother or her two-year-old brother to lose the house over it." On Exh. 3 at 17. The Court considers that it is not uncommon for victims to withdraw their stories and the Respondent's daughter specifically admitted to her capacity to lie. Bond Exh. 4 at 4 ("I. . . admit that I lied to the authorities when I said my father had assaulted me … I felt like a burden to my parents because of **lies I had told in the past**") . . . The Court also notes the vulnerability of the Respondent's daughter and power dynamic in their relationship as father and daughter. Additionally, the Court finds the police report to be reliable, given officer's observations of a mark on the Respondent's daughter's leg, and that its use would not be fundamentally unfair since the Respondent was "given an opportunity to challenge its veracity and refute its contents." See Rosa v. Garland, 114 F. 4th 1, 9-11 (1st Cir. 2024) (citing Arias-Minaya v. Holder, 779 F.3d 54 (1st Cir. 2015) (before relying on a police report an IJ

> must first determine "that the report is reliable and that its use would not be fundamentally unfair").

Bond Order at 4.

This Court will not reweigh these findings in any way and accepts the reasoning of the Immigration Judge for discounting the recantation of Respondent's daughter.[3] As to dangerousness, however, the government was required to "prove by clear and convincing evidence[4] that the [Respondent] poses a danger to the community." Hernandez-Lara, 10 F.4th at 41.

In the administrative law context -- the context applicable to this civil immigration hearing -- the Supreme Court has said:

> The clear and convincing standard of proof has been variously defined in this context as . . . evidence which "produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue."

Cruzan by Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261, 285 n.11 (1990) (citations omitted). The Fifth Circuit has

---

[3] Such recantation, of course, frustrated further criminal proceedings in the courts of the Commonwealth and required their dismissal. The Court draws on its own experience to confirm that such situations occur with some frequency.

[4] Clearly, the First Circuit means "evidence" in its generic administrative law sense, not the more restrictive sense used in the Federal Rules of Evidence -- here the police report would constitute inadmissible hearsay when offered for the truth of its contents.

indicated that the Supreme Court has adopted this definition. See In re Medrano, 956 F.2d 101, 102 (5th Cir. 1992).

In the First Circuit, "'[c]lear and convincing evidence' means 'highly probable,' or 'reasonably certain.' It falls between preponderance of the evidence and proof beyond a reasonable doubt." Díaz-Alarcón v. Flández-Marcel, 944 F.3d 303, 306 n.5 (1st Cir. 2019) (citations omitted).

Here, the Court cannot conclude that the actual, see n. 4 supra, evidence before the Immigration Judge, though I defer to her findings, could, as matter of law, constitute clear and convincing evidence even in the administrative law context. This is especially true when the record is utterly bereft of any evidence -- not a scintilla -- of any other misconduct, either in the domestic context or the community at large.

Upon this analysis the Court rules as matter of law that the "evidence," see n. 4, supra, supplied by the government is simply insufficient to establish either (1) "clear and convincing evidence that [Petitioner] poses a danger to the community or (2) prove by a preponderance of the evidence that [he] poses a flight risk." Hernandez-Lara at 41.

The Respondent having been denied a bond hearing that comports with due process, he is ordered released forthwith on terms sufficient to secure his attendance at further immigration hearings.

**AN ADDITIONAL ORDER**

In American Association of University Professors v. Rubio, 802 F. Supp. 3d 120, 162-163 (D. Mass. 2025) ("AAUP"), judgment entered, No. CV 25-10685-WGY, 2026 WL 524753 (D. Mass. Jan. 22, 2026), appeal pending First Cir. No. 26-1195, this Court, given the manifest efforts there to chill free speech, and in order to insure the integrity of this Court's processes, found it necessary to issue a protective order barring retaliation pertaining to all persons, including counsel participating in that trial. See AAUP, No. CV 25-10685, Hr'g Tr. 47:1-12, ECF No. 310; Order, ECF No. 174.

So here. This Court finds and rules under its undoubted authority to insure both the integrity of its own proceedings and that they are based on the facts and the law that, should any Immigration Judge whose actions are the subject of any habeas proceedings before this session of the Court hereafter be demoted, unwillingly transferred, or terminated, upon request the government shall provide this Court with the detailed reasons for such individual decision. See Comey v. U.S. Dept. of J., No. 25-CV-7625 (JMF), 2026 WL 3203254, at *24 (S.D.N.Y. Oct. 26, 2026). Such important public officials deserve no less.

Here's why. This Court finds persuasive these thoroughly researched dispassionate law review articles.[5] Elizabeth Keyes, What Constitution? The Dual State Theory in Immigration Laws & Practice, 79 SMU L. Rev. 129, 155-157 (2026) ("Destruction of the Immigration Judges Corpo"). R. Linos Chan., Managing Deportation: How Docket Control Replaced Substantive Relief in Immigration Courts, 79 SMU L. REV. 161, 191 (2026) ("Detained respondents are removed at rates that approach 100% in many jurisdictions . . . . [W]e risk creating an immigration court system that functions as a pure deportation assembly line."). Jennifer Lee Koh, Incapacitating the Immigration Courts, 79 SMU L. REV. 51, 77 (2026) ("[D]establishing the capacity of the immigration courts is likely to enhance opportunities for force and violence to shape removal adjudication."). Beth K. Zilberman, Presidential Power and Administering Injustice in Removal Proceedings, 58 LOY. L.A.L. REV. 659, 716 (2025) ("As the nation continues to face deep polarization, presidential regime change will have profound impacts on the vulnerable individuals compelled to appear before high volume administrative courts, where decisions often carry profound, life-changing implications."); see also John Woodrow

[5] The pin cites and the parentheticals are provided simply for the tenor. The Court invites careful, thorough scrutiny of the text of each of these articles.

Cox, Trump's DOJ told a judge how to rule. Then it pulled her from court, The Washington Post (October 25, 2026); see generally Anja Bossow, Deportation As Torture, 57 Intl L. & Politics 323 (2025).

**SO ORDERED.**

William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[6]

[6] This is how my predecessor, Peleg Sprague (D. Mass 1841-1865), would sign official documents. Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 48 years.